IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL |
| | : | CASE NO. 09-0612-1 |
| v. | : | |
| | : | |
| MICHAEL MATTHEWS | : | |

**M E M O R A N D U M**

Gene E.K. Pratter, J.                                                                        October 27, 2011

**INTRODUCTION**

      Defendant Michael Matthews calls upon the Court to reject the jury's finding that, among other things, he conspired to and attempted to commit robbery in violation of 18 U.S.C. § 1951 ("The Hobbs Act"), that he carried or used a firearm during or in relation to a crime of violence, or that he aided and abetted these crimes.  Specifically, Mr. Matthews challenges the sufficiency of the evidence presented to the jury by the Government to sustain the guilty verdicts.  In addition, Mr. Matthews asserts that the felon in possession of a firearm statute is unconstitutional.  Mr. Matthews has moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29 ("Rule 29") or, in the alternative, for a new trial under Federal Rule of Criminal Procedure 33 ("Rule 33").

      Having carefully considered the parties' briefs, and having reviewed the trial transcripts and the transcript of the July 25, 2011 oral argument on these Motions, the Court concludes that it cannot and should not disrupt the jury's reasonable conclusion that Mr. Matthews is guilty of these crimes.

**FACTUAL AND PROCEDURAL BACKGROUND**

Evidence presented at trial established that, in May and June of 2009, Michael Anderson was planning to rob the Express Check Cashing store located at 5300 Tabor Road, Philadelphia, PA.  To that end, Mr. Anderson recruited Shante Jenkins, Ambyr Jones, and Defendant Michael Matthews to serve as "look-outs," and developed a plan by which he and others would disguise themselves to observe and then rob the store.  Evidence presented by the Government, including the testimony of Mr. Anderson, Ms. Jenkins, Ms. Jones, the manager of the check cashing store, and several police officers, as well as physical evidence recovered at the scene, convinced the jury that Mr. Matthews had played a significant role in planning and, eventually, attempting to execute the robbery.

According to the testimony of the manager of the Express Check Cashing store ("Express Manager") and of the arresting officers, the following events took place between June 6 and June 12, 2009:  Toward the end of May or June, police were notified by the Express Manager that two individuals had been loitering near the store, and that these two were wearing concealing female Muslim clothing, but did not look or walk like women.  Tr. 12/7/10 at 11, Tr. 12/8/10 at 36-38.  On June 6th, the Express Manager reported to the police that two similarly dressed individuals were sitting outside the store in a tan or gold vehicle, and she showed police the store's video surveillance footage depicting these events.  Tr. 12/7/10 at 12-16; Tr. 12/8/10 at 39-44.  In response to the Express Manager's concerns, Police Officers Frisco, Pomeroy, Storm and Sanchez established surveillance outside the store.  Tr. 12/7/10 at 16-17.  On the morning of June 12, 2009, after several days of surveillance, Officer Storm observed a small, gold automobile outside the check cashing store.  Tr. 12/7/10 at 180.  Officer Storm saw Mr. Anderson in the driver's seat of the gold car.  Tr. 12/7/10 at 183.  Officer Storm also observed Mr. Matthews walking away from

the vehicle carrying a green backpack or book bag. Tr. 12/7/10 at 184-85. Officer Storm believed these males fit both the description and the past behavior of the individuals described in the Express Manager's police report, although they were no longer wearing Muslim clothing. Tr. 12/7/10 at 190. Officer Storm observed that Mr. Matthews and Mr. Anderson appeared to be talking to each other by cell phone. Tr. 12/7/10 at 185-86, 212-14. While talking on his cell phone, Mr. Matthews walked past the check cashing store and stopped at a bus stop at the corner of Tabor Road and Adams Avenue, Tr. 12/7/10 at 185-89; however, Officer Storm testified, Mr. Matthews did not look in the direction of oncoming buses, but in the opposite direction, toward Mr. Anderson, who continued to drive the gold car very slowly toward the check cashing store. *Id*. Eventually, Officer Storm was able to view the license plate on the rear of the car, which he testified was crooked and appeared to be partially detached, as though it had been affixed hurriedly; upon running a records check on the tag number, Officer Storm learned that the license was stolen. Tr. 12/7/10 at 188-89. Officers Frisco and Pomeroy soon arrived at the scene, and the police detained Mr. Anderson, and stopped Mr. Matthews at the bus stop. Tr. 12/7/10 at 23-29, 50-52, 191. Mr. Matthews told Officer Frisco that he was waiting for a bus, on his way to work, and that the bag he carried was not his own, but belonged to a friend. Tr. 12/7/10 at 31, 52. From inside the book bag, police recovered an inoperable Rino Galesi .22 caliber handgun, duct tape, and black nylon gloves. Tr. 12/7/10 at 31, 53-55. Police also recovered cell phones from both Mr. Matthews and Mr. Anderson, and female Muslim clothing from the back seat of the gold car. Tr. 12/7/10 at 33, 195-97; Tr. 12/8/10 at 245-47.

At trial, Mr. Anderson, who was a cooperating witness, testified that it was initially his own idea to rob the check cashing store, and testified as to how he observed the operations and employees of the store, and recruited others to assist him in the robbery. Tr. 12/8/10 at 86-

95. On three consecutive days in May 2009, Mr. Anderson attempted to rob the store. Tr. 12/8/10 at 98. First, Mr. Anderson arranged for his neighbors, Ambyr Jones and Shante Jenkins, and his girlfriend Kristian Smith to assist him as "look-outs" (to observe the store in advance of Mr. Anderson's attempts, and to watch for approaching police or customers while Mr. Anderson committed the robbery), and purchased female Muslim garb to hide his identity. Tr. 12/8/10 at 99-100; 103-05. During or after these three failed attempts, Mr. Anderson told Mr. Matthews about his plan, and Mr. Matthews expressed his interest in assisting with the robbery, because he had been laid off from his job[1] and needed money. Tr.12/8/10 at 85-86, 109-10.

    Ms. Jones and Ms. Jenkins testified at trial about their own and Mr. Matthews's roles in the robbery scheme. Tr. 12/7/10 at 78-126, 229-76. According to their testimony, Ms. Jones and Ms. Jenkins lived together in an apartment building across the hallway from Mr. Anderson, but met Mr. Matthews only several weeks before his June 12th arrest. Tr. 12/7/10 at 79-81, 235-36. Initially, the two women served as look-outs during the planning and execution of the robbery scheme. Ms. Jones testified that, as a look-out, she understood that she was to call Mr. Anderson, Mr. Matthews or Ms. Jenkins if she saw any police near the check-cashing store. Tr. 12/7/10 at 92-94. Ms. Jenkins testified that Mr. Matthews also served first as a look-out, Tr. 12/7/10 at 239, and that she drove Mr. Matthews to his look-out position on more than one occasion. Tr. 12/7/10 at 239-40. Both Ms. Jones and Ms. Jenkins testified that Mr. Matthews was involved in discussions with Mr. Anderson about obtaining a gun with which "to scare the lady that opened the check cashing place," to "strike her with it," or to "knock the store employee out," Tr. 12/7/10 at 87, 242, and that the co-conspirators, including Mr. Matthews, planned to split the proceeds of the robbery evenly among themselves. Tr. 12/7/10 at 88, 238; Tr. 12/8/10 at 110-11. According

---

[1] Ms. Jones and Ms. Jenkins also testified that, to their knowledge, Mr. Matthews was not employed during the time he participated in planning and attempting the robbery. Tr. 12/7/10 at 97, 251.

to the two women, Mr. Matthews's role changed over time, from look-out to active participant, and eventually Mr. Matthews discussed entering the check cashing store himself to rob it, after Mr. Anderson exhibited some reluctance to continue with the scheme.  Tr. 12/7/10 at 95-98, 241.

With respect to the June 6th robbery attempt, the testimony of the co-conspirators is less consistent:  Ms. Jones and Ms. Jenkins testified that Mr. Matthews was supposed to enter the store with Mr. Anderson and overpower the employee, Tr. 12/7/10 at 84-86, 89, 124, 245, but Mr. Anderson recalled that Mr. Matthews was merely a look-out, while Ms. Smith drove the car, and Mr. Anderson approached the store dressed in female Muslim garb and carrying a lady's purse, in which he had placed duct tape and a gun.  Tr. 12/8/10 at 116-20.  Ultimately, the June 6th robbery attempt was aborted, Tr. 12/7/10 at 94; Tr. 12/8/10 at 123-24, and Mr. Anderson called off the plan in its entirety.  Tr. 12/8/10 at 126.

However, later that week, Mr. Anderson noticed that an armored car had unloaded what appeared to be a large amount of cash at the store, renewing his interest in the robbery.  Tr. 12/8/10 at 126-28.  Mr. Matthews, he testified, insisted that the robbery proceed the following day.  Tr. 12/8/10 at 128, 163-64.  In planning their next attempt, the two men followed one of the employees of the check cashing store home to learn her address, so that they could threaten her with this information if she refused to assist them.  Tr. 12/8/10 at 128-30.  Mr. Anderson testified that, on the morning of June 12th, Mr. Matthews arrived at his apartment, where Mr. Anderson gave him the lady's purse from the previous attempt, which now contained the gun, duct tape, gloves, and Muslim women's clothing.  Tr. 12/8/10 at 164-66.  Mr. Matthews, however, declined to wear the original disguise, and borrowed a different bag from Ms. Jones, who lived next door.  Tr. 12/8/10 at 165-67.  Ms. Jones testified that she provided Mr. Matthews with an empty green book bag for the purpose.  Tr. 12/7/10 at 98-100.  Mr. Anderson further testified that, during the

drive to the store, Mr. Matthews transferred the contents of the lady's purse to the green book bag. Tr. 12/8/10 at 167-74.

Upon arriving at the check cashing store, Mr. Anderson testified, the two men set their cellular telephones in a way that made it easy for them to communicate with each other, and Mr. Matthews waited while Mr. Anderson affixed the stolen license plate to the car. Tr. 12/8/10 at 175. Then Mr. Anderson returned to the car, while Mr. Matthews walked toward the bus stop. Tr. 12/8/10 at 176, 179. According to Mr. Anderson, the plan then required him to drive the getaway vehicle and keep watch for police, while Mr. Matthews waited for the store employee to arrive, at which point Mr. Matthews would approach the employee from behind before she entered the store, put the gun to her back, and tell her that if she ever wanted to make it back to her home address, she would cooperate by turning off the store alarm and putting money in a bag for Mr. Matthews. Tr. 12/8/10 at 181. Before the store employee arrived, however, police arrested both men.

On January 28, 2010, a grand jury in the Eastern District of Pennsylvania returned a superseding indictment against Mr. Matthews charging him with five counts: conspiracy to commit robbery which interfered with interstate commerce, in violation of 18 U.S.C. § 1951 ("The Hobbs Act") (Count One); attempted robbery which interfered with interstate commerce, in violation of the Hobbs Act, on June 6, 2009 (Count Two) and on June 12, 2009 (Count Three); carrying and using a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1) (Count Four); and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count Five). Mr. Matthews was also charged with aiding and abetting Counts One through Four, in violation of 18 U.S.C. § 2. Mr. Andrews pleaded guilty and only Mr. Matthews proceeded to trial. On December 9, 2010, after three days of trial, the jury found Mr. Matthews

guilty on Counts One, Three, Four and Five of the superseding indictment, but acquitted on Count Two.

Mr. Matthews now moves for a judgment of acquittal pursuant to Rule 29, or in the alternative, for a new trial under Rule 33, because he submits that no reasonable jury could have concluded, based on the evidence submitted at trial—which was predominantly testimony offered by Mr. Matthews's co-conspirators—that the government had proved beyond a reasonable doubt that he had conspired or attempted to commit robbery which interfered with interstate commerce; carried or used a firearm during and in relation to a crime of violence; or aided and abetted any of these crimes.

**DISCUSSION**

This Court can grant a Rule 29 motion for judgment of acquittal only if the Court finds that the evidence presented at trial is insufficient to sustain the jury's verdict of conviction. *See* Fed. R. Crim. P. 29(a). A defendant's burden in the context of a Rule 29 motion is a heavy one, given that the Court must only determine that, viewing the evidence as a whole and in the light most favorable to the Government, including drawing all reasonable inferences from that evidence in the prosecution's favor, no rational fact finder could have found the defendant guilty beyond a reasonable doubt. *See United States v. Boria*, 592 F.3d 476, 480 (3d Cir. 2010); *United States v. Hoffecker*, 530 F.3d 137, 146 (3d Cir. 2008); *United States v. Smith*, 294 F.3d 473, 476-78 (3d Cir. 2002). In reviewing a motion for a judgment of acquittal due to insufficient evidence pursuant to Rule 29, the Third Circuit has cautioned reviewing courts to "apply a particularly deferential standard[,] because a reviewing court must be ever vigilant not to usurp the role of the jury by weighing credibility and assigning weight to the evidence." *United States v. Walker*, Nos.

10-3090, 10-3210, 2011 WL 4035767, at *7 (3d Cir. Sept. 13, 2011) (internal punctuation omitted) (quoting *United States v. Mercado*, 610 F.3d 841, 845 (3d Cir. 2010). Furthermore, the Court must remain mindful that "the evidence does not need to be inconsistent with every conclusion save that of guilt." *United States v. Gonzalez*, 918 F.2d 1129, 1132 (3d Cir. 1990) (quoting *Gov't of Virgin Islands v. Williams*, 739 F.2d 936, 940 (3d Cir. 1984)). Instead, a reviewing court examines "the totality of the evidence, both direct and circumstantial, and only when the record contains no evidence, regardless of how it is weighted, from which the jury could find guilt beyond a reasonable doubt," *Walker*, 2011 WL 4035767, at *7 (internal punctuation and citations omitted) (citing *United States v. Sparrow*, 371 F.3d 851, 852 (3d Cir. 2004); *United States v. Mussare*, 405 F.3d 161, 166 (3d Cir. 2005)), should the Court reverse a jury verdict for insufficiency of the evidence.

Pursuant to Rule 33, upon a defendant's motion, the court may vacate any judgment and grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). "Unlike an insufficiency of the evidence claim, when a district court evaluates a Rule 33 motion it does not view the evidence favorably to the Government, but instead exercises its own judgment in assessing the Government's case." *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002). However, "[a] district court can order a new trial on the ground that the jury's verdict is contrary to the weight of the evidence only if it believes that there is a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted." *Id.* (citations and internal quotations omitted). Therefore "[m]otions for a new trial based on the weight of the evidence are not favored. Such motions are to be granted sparingly and only in exceptional cases." *Gov't of Virgin Islands v. Derricks*, 810 F.2d 50, 55 (3d Cir. 1987) (citation omitted).

A.      **<u>Counts One & Three</u>**

To establish a Hobbs Act violation under 18 U.S.C. § 1951, the Government must prove beyond a reasonable doubt "(1) that the defendants induce their victims to part with property; (2) that the defendants do so through the use of fear; and (3) that, in so doing, the defendants adversely affect interstate commerce." *United States v. Local 560 of the Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen, and Helpers of Am.*, 780 F.2d 267, 281 (3d Cir. 1985). However, "The Hobbs Act, by its own terms, encompasses the inchoate offenses of attempt and conspiracy . . . ." *United States v. Jannotti*, 673 F.2d 578, 592 (3d Cir. 1982) (en banc), with which Defendant here is charged. At trial, therefore, the Government had to prove the essential elements of a conspiracy to commit a Hobbs Act violation, which include (1) a shared unity of purpose between or among the alleged conspirators; (2) intent to achieve a common goal that violates the Hobbs Act; and (3) agreement to work together toward that goal. *See, e.g., United States v. Perez*, 280 F.3d 318, 342 (3d Cir. 2002); *United States v. Pressler*, 256 F.3d 144, 147 (3d Cir. 2001). Finally, to prove attempted Hobbs Act robbery, the Government had to show that the defendant intended to commit that crime and that he took "undeniable action" to accomplish that intent. *See United States v. Henry*, No. 06-33-01, 2007 WL 2458555, at *9 (E.D. Pa. Aug. 24, 2007); *see also United States v. Tykarsky*, 446 F.3d 458, 469 (3d Cir. 2006) ("[A]n attempt conviction requires evidence that a defendant (1) acted with the requisite intent to violate the statute, and (2) performed an act that, under the circumstances as he believes them to be, constitutes a substantial step in the commission of the crime.").

Based even only on the evidence recounted above, the Court concludes that the Government presented sufficient evidence to support the jury's determination that Mr. Matthews conspired to commit Hobbs Act robbery and attempted to commit Hobbs Act robbery under 18

U.S.C. § 1951.  It is uncontroverted that Mr. Matthews was arrested within a block of the check cashing store, holding a bag that contained a firearm, duct tape, and gloves, and that Mr. Anderson was likewise arrested in close proximity to the store, driving a car with stolen license tags and female Muslim clothing in the back seat.[2]  The Government presented evidence in the form of cellular telephone records to show that Mr. Matthews and Mr. Anderson were in direct communication in the moments before they were arrested, Tr. 12/8/10 at 252-56, and the jury was entitled to credit the testimony of the arresting officers about the behavior of the two men just prior to and during their arrest.  Most importantly, the jury found the testimony of Mr. Anderson, Ms. Jones, and Ms. Jenkins as to Mr. Matthews's role in planning and executing the robbery scheme credible.  Their testimony described a number of actions on the part of Mr. Matthews that were sufficient – alone or collectively – to show a "substantial step" toward the commission of the robbery, including participating in multiple conversations about how to accomplish the robbery, following the store employee home to obtain her address, obtaining the green book bag for the June 12th attempt, transferring the tools of the robbery to that bag, assisting Mr. Anderson in changing the license tag on the getaway car, and approaching the store with a gun in his possession, to wait for the arrival of the store employee.  Based on this evidence, a reasonable jury might also conclude that Mr. Matthews knew the goals of the conspiracy to commit the robbery and acted in furtherance of that conspiracy.  *See*, *e.g.*, *United States v. Rodriguez*, 54 F. App'x 739, 745 (3d Cir. 2002) (holding that co-conspirator's testimony that Appellants "brought firearms to his apartment . . . , spent hours loading the firearms, stole vehicles to use in the

---

[2] At oral argument on the instant motion and in correspondence to the Court supplementing his motion, Mr. Matthews drew particular attention to the fact that the check cashing store was closed at the time of his arrest; however, the Court does not find this fact sufficient to discredit the jury's conclusion that Mr. Matthews attempted to rob the store, especially in light of Mr. Anderson's testimony that the robbery plan required Mr. Matthews to approach an employee as she arrived to open the store. Tr. 12/8/10 at 181.

robbery, dressed for the robbery, left a switch car near the robbery location and drove to th[at] location . . . was sufficient to support a finding that the Appellants took a substantial step" to commit Hobbs Act robbery).[3] Even had his cooperating co-conspirators' testimony been the only direct evidence of Mr. Matthews's involvement in these crimes, it was not unreasonable for the jury to find Mr. Matthews guilty. Although the Government's case may include testimony by an "array of scoundrels, liars and brigands," *United States v. Tiche*, 424 F. Supp. 996, 1000 (W.D. Pa. 1977), *aff'd mem.*, 564 F.2d 90 (3d Cir. 1977)), it is the province of the jury to determine the credibility of that array. *United States v. Richardson*, No. 11-1202, 2011 WL 4430808, at *3 (3d Cir. Sept. 23, 2011).

Defense counsel has further argued that the district court's holding in *United States v. Smith*, No. 07-743-02, 2009 WL 2835752 (E.D. Pa. Aug. 31, 2009) is applicable to the instant case. The Court respectfully disagrees. In *Smith*, the defendant was charged with attempted bank robbery for sitting outside a bank in a parked vehicle in which police found, among other things, black gloves, black full-face ski masks, and BB guns. The *Smith* court, after carefully parsing the language of 18 U.S.C. 2113(a), vacated the conviction, holding that the statute required evidence that the defendant actually used force, violence, or intimidation in his attempt to commit the bank robbery. Section 2113(a) reads, in pertinent part, "Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, . . . any property or money or any other thing of value . . . ." The Hobbs Act language at issue here reads, by contrast:

---

[3] Because the Court finds that the Government presented evidence sufficient to sustain the jury's verdict that Mr. Matthews attempted and conspired to commit a Hobbs Act robbery, it need not also determine whether Mr. Matthews aided and abetted the commission of those crimes; however, for the record, the Court holds that the evidence discussed in detail above is equally – if not more than – sufficient to support conviction under an aiding and abetting theory.

> (a) Whoever in any way or degree obstructs, delays, or affects commerce . . . by robbery or extortion *or attempts or conspires so to do*, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section . . . . (b) As used in this section—(1) The term 'robbery' means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession . . . .

18 U.S.C. § 1951(a)-(b) (emphasis added). Applying the *Smith* court's grammatical analysis to the language of the statute at issue here, the Court holds that "attempts or conspires" modifies not only the "taking" elements of the robbery definition, but also the elements of that definition which require the use of actual or threatened force. Based on the evidence previously discussed, it was not unreasonable for the jury to find that Mr. Matthews took substantial steps toward using force or threatening violence to commit the robbery.

## B. Count Four

In returning a guilty verdict on Count Four, the jury determined that Mr. Matthews violated 18 U.S.C. § 924(c)(1), which prohibits the use or carrying of a firearm during and in relation to a crime of violence. To support Mr. Matthews's conviction for knowingly possessing a firearm in furtherance of a Hobbs Act robbery, the Government must have presented evidence sufficient to prove that Mr. Matthews was guilty of the underlying Hobbs Act violation, that he knowingly used or carried a firearm, and that the use or carrying of the firearm was during and in relation to the crime. *See U.S. v. Welton*, 387 F. App'x 189, 191 (3d Cir. 2010). Mr. Matthews contends that the concealment of the gun, and its unrevealed presence during the attempted robbery, renders the Government's evidence insufficient, because the Government could not establish that Mr. Matthews knew of the presence of the gun in the green bag, that he had ever

handled the gun, or that he used or intended to use the gun in furtherance of the underlying offense. Although Mr. Matthews argues correctly that "mere presence of a gun is not enough" to obtain a conviction under § 924(c), *Walker*, 2011 WL 4035767, at *8 (internal punctuation and citation omitted), the Court does not see any reason to overturn the jury's determination here that Mr. Matthews knowingly or constructively possessed the gun and intended to use it during the attempted robbery. There was direct evidence that Mr. Matthews carried the firearm, because it was found in the green book bag he was holding when he was arrested, and the jury was entitled to credit the testimony of Mr. Anderson and Ms. Jenkins that Mr. Matthews had participated in conversations about using the gun to scare or injure the store employee, the testimony of Ms. Jones that the green bag was empty when she gave it to Mr. Matthews, and the testimony of Mr. Anderson that Mr. Matthews transferred the contents of the lady's purse—which included the gun—to the bag he carried on the day of the robbery. Based on that testimony, a reasonable jury could conclude that Mr. Matthews knowingly used or carried the gun.

  Mr. Matthews has also argued that the evidence supporting the § 924(c) conviction charge was insufficient because the firearm in question was not operable at the time he was arrested, nor could it readily be made operable. For purposes of § 924(c), a firearm is defined as: "(A) any weapon . . . which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon . . . ." 18 U.S.C. § 921(a)(3). The term does not, however, include an antique firearm, a toy gun, or a replica. *See, e.g.*, *United States v. Beverly*, 99 F.3d 570, 571-72 (3d Cir. 1996).

  The gun found in Mr. Matthews's bag was a 1958 Rino Galesi .22 caliber handgun which was inoperable due to a missing firing pin. Tr. 12/8/10 at 16-17, 20-21. Mr. Anderson testified at trial that he had received the gun from Ms. Jenkins and carried it during his previous attempts to

rob the check-cashing store, but that at some point prior to July 12th, while he was handling the gun, the firing pin "jumped out of it," and was lost or discarded. Tr. 12/8/10 at 95-97. At trial, a firearms expert showed the jury the frame of the firearm, explained that the barrel contained shot residue, and concluded that the gun had been designed to expel a projectile. Tr. 12/8/10 at 22-23. However, the expert also testified that the gun was not capable of discharging a cartridge without a firing pin, was therefore not operable at the time of Mr. Matthews's arrest, and could not readily have been made operable, because a suitable firing pin for a gun of this age and type would be difficult to obtain. Tr. 12/08/10 at 20-24. Nevertheless, the operability of the gun in this case is immaterial, and the gun fits within the statutory definition of a firearm. *See, e.g.*, *United States v. Rivera*, 415 F.3d 284, 286 (2d Cir. 2005) (holding that inoperable pistol with damaged firing pin and firing-pin channel was still a firearm within the meaning of Section 921(a)(3), and citing similar holdings in other circuits).

 Mr. Matthews has also argued that the gun's inoperability negates the required relationship or nexus between the crime and the firearm. However, not only is the record devoid of evidence that Mr. Matthews knew that the gun was broken, but the language of § 924(c)(1)(A) requires only that a defendant "use[] or carr[y]" —not fire, or be able to fire, or intend to fire—the firearm "during and in relation to" a crime of violence. Here, the jury might reasonably conclude, based on physical evidence and the testimony of his co-conspirators, that Mr. Matthews carried the firearm and intended to use it in some fashion to accomplish the underlying crime.

 C. **Count Five**

 The Court has previously rejected Mr. Matthews's argument that Section 922(g)(1) is unconstitutional because it does not regulate an activity that substantially affects interstate commerce, Tr. 12/8/10 at 147-56, and sees no reason to reconsider its previous decision. The

Third Circuit squarely rejected this argument in *United States v. Singletary*, 268 F.3d 196 (3d Cir. 2001), and that decision is binding precedent.

**CONCLUSION**

In light of the evidence discussed above, viewed as a whole and in the light most favorable to the Government, including drawing all reasonable inferences from that evidence in the prosecution's favor, the Court concludes that a rational fact finder could have found Mr. Matthews guilty of these crimes beyond a reasonable doubt. Similarly, but exercising its own judgment in reviewing the evidence presented at trial, the Court does not believe that the jury's verdict was contrary to the weight of that evidence. Mr. Matthews's motion for a judgment of acquittal pursuant to Rule 29 or, in the alternative, for a new trial pursuant to Rule 33, will therefore be DENIED. A separate Order to this effect shall follow.

BY THE COURT

  /s/ Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE